**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William HILL, Defendant–Appellant.**

**No. 02–1709.**

United States Court of Appeals,
Sixth Circuit.

Nov. 4, 2003.

R. Michael Bullotta, Jennifer J. Peregord, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Rita Chastang, James R. Gerometta, Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before MARTIN and SUTTON, Circuit Judges; and MILLS, District Judge.*

* The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

OPINION

MILLS, District Judge.

Pursuant to a written plea agreement, William Hill entered a conditional plea of guilty to the charges of possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Hill reserved the right, however, to appeal the district court's denial of his motion to suppress the evidence seized during a police search of his home which he claims violated his Fourth Amendment rights. The district court sentenced Hill to concurrent terms of 88 months of imprisonment on each count of conviction. Hill now appeals the district court's denial of his motion to suppress.

For the reasons set forth below, we AFFIRM.

## I. BACKGROUND

On December 6, 2001, four Detroit police officers, including Officer Andre Guyton, went to a single family residence at 3797 Monterey in Detroit in order to question William Hill whom the police believed to be a witness or, possibly, a suspect in a homicide investigation. Although Hill's listed address was different from the 3797 Monterey address, the police officers had received information and had conducted surveillance indicating that Hill was living or, at least, staying at the Monterey house. The police officers believed that they would find Hill at the 3797 Monterey resi-dence on December 6, 2001, because an automobile which was registered to him was parked on the street in front of the residence at the time.[1]

When the officers arrived at the house, Officer Guyton and another officer went to the front door; a third officer went to the side of the house; and a fourth officer stood out in front of the house on the sidewalk. Although Officer Guyton was dressed in civilian clothing, he had his badge hanging around his neck.[2]

Officer Guyton knocked on the front door of the house, and Richard Weaver answered. Officer Guyton asked Weaver several questions including whether Hill was in the residence. Weaver appeared uncomfortable, stuttered and stammered, and eventually responded, "No." Officer Guyton then asked Weaver if he could see some identification, and Weaver stepped out of the house onto the front porch and presented his identification. Officer Guyton also asked Weaver if he would be willing to speak with the officer who was standing on the sidewalk, and Weaver agreed to do so.

Thereafter, Officer Guyton again knocked on the front door,[3] and Brenda Cox answered. Officer Guyton explained to Cox why they were there and asked if they could speak with her. She said, "Yes," and opened the screen door so that the two officers could enter. The officers then walked into the house as Cox held the door open for them.[4]

---

1. The officers also knew that Hill was a convicted felon and had received information that he was currently involved in narcotics trafficking.

2. Likewise, the other officers were wearing civilian clothing.

3. At this time, the interior door to the residence was open, and only an outer screen door was closed.

4. Cox denies inviting the police officers into the residence or in any way consenting to their entrance. On the contrary, Cox testified that she went to lock the front door after Weaver had failed to return, and when she got to the front door, the officers were already coming inside without first knocking, ringing the door bell, or obtaining her permission to do so.

After entering the house, Cox and the officers proceeded to the living room where a conversation ensued. From his vantage point in the living room, Officer Guyton could see that there were other people in the house, including two women in a back room and two children. Officer Guyton asked Cox whether Hill was in the house. Cox stuttered, stammered, started to be evasive, and finally answered, "No." Officer Guyton then asked Cox whether she lived in the house. At first, Cox stated that she did. Later during the conversation, however, Cox said that she did not reside there, and she provided another address as being her residence. Still later during the conversation, Cox said that she was merely at the house to babysit. Finally, Officer Guyton asked Cox if anyone else was in the residence. Cox again became nervous and evasive and did not answer the question. Rather, she began walking toward the back of the house, and Officer Guyton followed her.

After walking approximately eight feet from the living room to the adjoining dining room near the hallway, Officer Guyton saw Cox look in the direction of a back bedroom and heard her whisper a warning to the individuals therein. Officer Guyton then took another step to the threshold between the dining room and the hallway and saw into an open bedroom. Therein, Officer Guyton, in plain view, saw Hill standing next to a bed holding a pill bottle in one hand and drug paraphernalia in the other. In addition, on a stool next to the bed, Officer Guyton saw a plate containing what appeared to be heroin. Upon seeing Officer Guyton, Hill appeared surprised and threw the pill bottle onto the bed. Officer Guyton then held up his badge, identified himself as a police officer, and proceeded into the bedroom. When he entered the bedroom, Officer Guyton saw a gun, in plain view, on the floor behind Hill.

Accordingly, Officer Guyton ordered Hill out of the bedroom, handcuffed and placed him under arrest for narcotics and weapons offenses, and also placed Cox under arrest on an outstanding felony warrant involving a narcotics offense and for loitering in a place of illegal occupation. Thereafter, Officer Guyton returned with his partner to the bedroom and recovered the drugs, drug paraphernalia, gun, and some additional contraband items which were also in plain view.

After being transported to the Detroit police station, Hill was advised of his *Miranda* rights, and he agreed to give a statement. In his statement, Hill admitted to Detroit Police Officer George Harris that he had been in possession of the drugs and the gun recovered from the bedroom at 3797 Monterey. Hill also indicated that he lived at a location other than the house on Monterey but that he had been staying at the Monterey house for about a year. Finally, Hill admitted that he sold drugs from the Monterey residence.

On December 13, 2001, a federal grand jury returned a two count Indictment against Hill charging him with possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On January 3, 2002, Hill filed a motion to suppress the evidence which the police officers recovered from the bedroom at 3797 Monterey, arguing that the officers obtained the evidence as a result of an unlawful search in violation of his Fourth Amendment rights. After conducting an evidentiary hearing on Hill's motion to suppress (at which Officer Guyton and Cox testified), the district court denied the motion.

On February 20, 2002, Hill entered a conditional plea of guilty, pursuant to a

written plea agreement, to the two counts with which he had been charged in the Indictment. However, Hill reserved the right to appeal the district court's denial of his motion to suppress. On May 23, 2003, the district court sentenced Hill to concurrent terms of 88 months of imprisonment on each count of conviction. The next day, Hill filed a notice of appeal challenging the district court's denial of his motion to suppress.

## II. ANALYSIS

"We review a district court's ruling on a motion to suppress through a mixed standard of review. Findings of fact supporting the court's decision are reversed only if they are clearly erroneous. The court's final determination as to the reasonableness of the search is a question of law reviewed *de novo."* *United States v. Galloway,* 316 F.3d 624, 628 (6th Cir.2003). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir.1999).

Furthermore, "[i]t is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Feldman,* 606 F.2d 673, 679 n. 11 (6th Cir.1979). "When reviewing the denial of a motion to suppress evidence, we must consider the evidence in the light most favorable to the government." *United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir.1993). Finally, we accord great deference to a district court's credibility determinations. *See Navarro–Camacho,* 186 F.3d at 705.

The issue which we must decide in this appeal is whether the police officers were "lawfully present" in the residence at 3797 Monterey. *See United States v. McLevain,* 310 F.3d 434, 439 (6th Cir.2002)(holding that the plain view doctrine requires a law enforcement officer to be "legally present" in the place where the evidence is discovered). *First,* we must determine whether the officers were lawfully present in the residence when they initially entered the home. *Second,* if they were, we must then decide whether they were lawfully present in the rear of the residence when they discovered the evidence which Hill sought to suppress.

## A. *ENTRANCE INTO THE RESIDENCE*

■ The Fourth Amendment generally prohibits the warrantless search of a home. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). However, "the search of property, without a warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment." *United States v. Matlock,* 415 U.S. 164, 165–66, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Consent need not be given by the actual owner of the home; rather, it is sufficient that a person with actual or apparent "common authority over or other sufficient relationship to the premises" voluntarily consents to the entry and search. *Id.* at 171. "The Government bears the burden of proving the consent to search was voluntary under the totality of the circumstances." *United States v. Salvo,* 133 F.3d 943, 953 (6th Cir.1998). "Proof of voluntary consent must be 'by clear and positive testimony' and the consent must be proven to have been 'unequivocal, specific, intelligently given, uncontaminated by any duress or coercion.'" *United*

*States v. Taylor,* 956 F.2d 572, 577–78 (6th Cir.1992)(quoting *United States v. Williams,* 754 F.2d 672, 675 (6th Cir. 1985)).

In the instant case, Hill argues that the district court erred in denying his motion to suppress in that the district court failed to conduct a proper review of the witnesses' credibility because it erroneously believed that, under either Officer Guyton or Cox's version of the events which transpired on December 6, 2001, the motion should be denied because Cox implicitly agreed to have a conversation with the officers. Although he admits that the district judge stated that she found Officer Guyton to be more credible than Cox with respect to what happened at the front door, Hill asserts that, when viewed in context, it is clear that the district judge did not base her ruling upon the credibility of the witnesses.

Moreover, Hill contends that, had the district judge conducted a complete evaluation of the witnesses' credibility, she would have concluded that Cox was more credible than Officer Guyton with respect to the events which transpired at the front door at 3797 Monterey. Specifically, Hill claims that the district judge would have and should have concluded that Cox did not consent to Officer Guyton's entry into the residence. Accordingly, Hill asks the Court to vacate his conviction and to remand the case with instructions to the district court to suppress the evidence because it was obtained as a result of a warrantless search of his home for which no exception applies in violation of his Fourth Amendment rights.

Contrary to Hill's characterization, we believe that the district judge based her denial of the motion to suppress upon the credibility of Officer Guyton. Specifically,

the district judge found Officer Guyton "to be more credible" than Cox and, thus, found that Cox consented to the officers' entrance into the house.[5]

■ Rather than constituting a failure to assess the witnesses' credibility, we interpret the district judge's comments at the close of the evidentiary hearing as simply providing an alternative basis upon which to deny Hill's motion to suppress. The fundamental basis for denying Hill's motion to suppress is that the district judge found Officer Guyton's testimony that Cox consented to his and his partner's entrance into the house to be more credible than Cox's testimony that the officers barged in uninvited. It is only in the alternative that the district judge concluded that, even if Cox were to be believed, the motion should be denied because Cox tacitly consented by agreeing to speak with the officers and by failing to ask them to leave.

Whether this alternative basis for denying Hill's motion to suppress is correct, we need not decide. As noted *supra,* we accord great deference to a district court's credibility determinations, *see Navarro–Camacho,* 186 F.3d at 705, and Hill has failed to convince us that the district judge's credibility finding was in error.

## B. *PRESENCE AT THE REAR OF THE RESIDENCE*

■ Next, Hill argues that the district court erred in denying his motion to suppress because, even assuming that Cox consented to the officers' entrance into the house, Officer Guyton exceeded the scope of that consent when he followed her into the back portion of the house. Hill contends that Cox never acquiesced to Officer Guyton's accompanying her to the rear of the residence, and in fact, she testified that

5. Initially, Hill argued that Cox lacked the authority to consent to the entrance of the residence by the police officers. However, at oral argument, his counsel conceded that Cox possessed the necessary authority to consent to the officers' entrance into the house.

she was surprised to see the officers behind her because she thought that they would remain in the living room while she retrieved Hill from the back bedroom.

Furthermore, Hill argues that the district court erred in finding that Officer Guyton was justified in following Cox to the rear of the residence for his and his partner's safety. Hill asserts that, under *Maryland v. Buie*, 494 U.S. 325, 330–37, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), a protective sweep of a home is only allowed when the police are executing an arrest warrant in the arrestee's home.

Here, the police officers were not at 3797 Monterey in order to arrest anyone; rather, they simply wanted to interview Hill. They did not see any exigent circumstances, nor did they see anything suspicious which would have made them fear for their safety. Accordingly, Hill claims that the police officers should have remained in the living room, obtained Cox's permission to follow her, or left the premises if they feared for their safety. *See United States v. Saari*, 272 F.3d 804, 812 (6th Cir.2001)("If the officers only wanted to talk to Saari, but were concerned about their safety in so doing, then they were required simply to summon him in a non-coercive fashion, using their own judgment as to how or if to warn him about any impending display of force."). Because the officers' search exceeded the scope of Cox's consent, Hill claims that the evidence obtained as a result of the search should be suppressed.

The United States Supreme Court has explained that, when a person consents to a governmental intrusion, he may place limits upon the scope of that intrusion:

> The scope of a search is generally defined by its expressed object.... Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed respondent that he believed respondent was carrying narcotics, and that he would be looking for narcotics in the car. We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container.... The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.

> \*  \*  \*  \*  \*  \*

> A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization.

*Florida v. Jimeno*, 500 U.S. 248, 251–52, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

In the present case, the district judge found that, when Cox permitted the officers to enter into the house, she did not place any limits or conditions upon their presence therein, nor did she attempt to confine their presence to any particular area of the house. In addition, Cox did not object to Officer Guyton's following her to the rear of the residence as he attempted to continue the conversation which had begun in the living room. Finally, Officer Guyton walked a mere eight feet with Cox before he saw the evidence at issue in plain sight.[6]

---

**6.** Hill does not challenge the district court's finding that the evidence which he sought to suppress was in plain view.

Under these circumstances, we agree with the district court that Officer Guyton could have reasonably understood that, by consenting to his entry into the house and by consenting to speak with him, Cox also consented to his movement to the location at which he discovered the evidence which Hill sought to suppress.[7]

## III. CONCLUSION

We agree with the district court that Cox consented to Officer Guyton's entrance into the house at 3797 Monterey. We also agree with the district court that Cox consented to Officer Guyton's accompanying her to the rear of the residence at 3797 Monterey. Based upon Cox's consent, Officer Guyton's search of 3797 Monterey did not violate Hill's Fourth Amendment rights. and therefore, the district court did not err in denying his motion to suppress the evidence obtained as a result of the search.

For these reasons, we **AFFIRM** the district court's denial of Hill's motion to suppress.

---

**7.** Because we find that Officer Guyton did not exceed the scope of Cox's consent to search the residence when he followed her approximately eight feet into the rear of the house, we need not address the district court's alternative holding that Officer Guyton's actions were justified for officer safety.